The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Rachel, do you have a plane to catch? That was pretty fast. Eight years of doing this, I guess. Pretty quick at it. Welcome, everybody, to the United States Court of Appeals for the Fourth Circuit. We have three cases on for hearing this morning. First up is 25-1372, Center for Excellence in Higher Education versus the Accreditation Alliance of Career Schools and Colleges. Mr. Obotchewicz, I'm sure I butchered that, I'm sorry, but whenever you're ready. May it please the Court. This Court in professional massage recognized that accreditors, like any other agency, can and do run off the rails, and that meaningful judicial review is essential to make sure that they play it straight and wielding what this Court has acknowledged as significant quasi-public authority over member schools' access to federal funding programs. At a minimum, this judicial review requires looking at whether an accreditor employed fair procedures in a fair tribunal, and where there is reason to expect foul play, the Court must also consider whether an adverse decision was based on a good-faith, consistent application of the standards rather than improper bias and ulterior motives. The proceedings below fell short of that mark. I thought the bad faith argument was different before the appellate panel. Wasn't there a different form of bad faith you were focused on earlier? Your Honor, we sought to show that the procedures that were employed with respect to CEHE were completely out of line with the procedures. That's like your disparate treatment claim, right? Yeah, and I think it goes beyond disparate treatment, Your Honor. What we were trying to show is that- I'm sorry. When did this argument about they're trying to deflect attention from this other thing that's going on, I think, in Colorado, when did that argument first surface? We tried to raise that in the arbitration, Your Honor. In the arbitration, okay. The judicial review decision, yes. Now, CEHE, or my opponent- So a central case for you is this professional massage case here, and the professional massage case. I would like you to speak to that. Tell me the difference, or at least to the extent of what do you rely on in that case, it being a case that did not involve arbitration. Yes, Your Honor. I think that that raises a very good point. What this court in professional massage said is that judicial review is a requirement in the accreditation process, and they explained in that case that the judicial check arose based on ACC's and other accreditors' significant quasi-public authority over matters of significant public concern. Here, the ability for schools to access topical funding, which is the lifeblood of higher education funding in this country. Very few schools could operate if their students could not access that money. So because this judicial check arises out of these matters of public concern, it's not simply a matter of discretion to what extent ACC wants to submit to that judicial review. At least, if this is the case I'm thinking about, there's a motion to vacate, correct? There's a motion to vacate. Yes, that is correct. And then there is a complaint. Yes. And the motion to vacate is premised on the actions of the arbitrator, and then there's a complaint about what the arbitrator did, correct? I think that they were both, we intended those both to be kind of one challenge to the process under professional massage of challenging the procedures that we received, but more importantly, the opportunity to challenge the lawfulness of the initial withdrawal decision itself, which, you know, as we felt we needed to raise in this process. That's the confusing part, is the Federal Arbitration Act in Section 10 says, gives you four different ways in which you can challenge it. It seems like to me your focus is on the third way, that he's guilty of some type of conduct, I'm not considering the evidence there. And then you have this separate complaint that was brought outside the arbitration to basically undo the arbitration. And I don't understand that. That doesn't seem to follow, and I'm not alone in it, of course, you know, there are other circuits that have looked at it, but speak to that. Because, you know, when you're trying to cabin your argument as to what you're arguing here today, it seems to me the focus is on the Federal Arbitration Act and what the arbitrator did in the case. I think the focus is much more on the Higher Education Act and professional massage and the due process that we're entitled to receive under that. And because those arbitration procedures categorically denied our ability to seek that judicial review, which is mandatory for accreditors to follow, they are unenforceable to the extent that they are being used to preclude us from raising the bad faith claims in federal court. So just going back to the motion to vacate, it looked like in the district court you argued, as Judge Wynn suggested, that the arbitrator engaged in misconduct. That was the ground for vacating the award. But I don't see you arguing that in your brief on appeal. Have you abandoned that argument? Well, our argument in that is that in the cases in this circuit that have addressed the arbitral misconduct, the focus is on is whether the arbitrator provided a full and fair process. And our contention has been that the fact . . . I guess I'm just asking you, I don't see misconduct under Section 10A3 anywhere in your brief on appeal, even though that was your argument in the district court. Are you still raising that argument that this arbitrator, by following the terms of the agreement, not allowing discovery, limiting the scope of review to what was before the appellate panel, that that constituted arbitral misconduct? Yes, Your Honor. It did amount to a complete denial of our right to a fair hearing on that. And the fact that . . . So even though you're going to . . . that's in your blue brief somewhere, this arbitral misconduct argument. Yes, I think in the reply. Well, ACCSC, in their opposition, they did challenge that there is no arbitral misconduct. Right, because that was the only argument you made in the district court. And we also . . .  Excuse me? As grounds for vacating the award. No, Your Honor, I don't think that's a fair reading of the pleadings below and the complaint. I mean, we've consistently argued the main thrust is that these instructions in the arbitration procedures categorically denied our right to judicial review under due process and the full scope of that review, and are thus, therefore, unenforceable to the extent that they are barring our claims that we're trying to bring here. Can I ask you a question about the procedural . . . the statute in this case? And this is related to Judge Wynn's question. You concede that these kinds of claims first have to be decided by an arbitrator under the statutory regime? Under the Higher Education Act, yes, there is a requirement that parties submit to initial arbitration before they can bring any federal claims in federal court. And that initial arbitration is intended to be binding or not? Well, it's an interesting question, Your Honor. Our contention is that it can't be manipulated in the way the ACCSC has to insulate it from the judicial review required by professional massage in light of the significant public authority and importance that there is that check. It's not mandatory. But more recently, in November 2023, so about a year after we filed this case, the Department of Education actually did issue guidance explaining that that initial arbitration is just that. It's initial, and it's not intended to be . . . But you do acknowledge that the grounds for you to challenge an arbitration, arbitrator's award, is under Section 10 of the Federal Arbitration Act, correct? And under Section 2 of the Arbitration Act, to the extent that . . . What under Section 2 gives you relief here? Because the arbitration award fundamentally denied us due process. It can't be used to enforce . . . To vacate. You have a motion to vacate. Section 10 says in order to vacate an order of it, you have four grounds to proceed on. As you answered to Judge Harris's question, you say it's the third ground that is misconduct. If you don't say that, I don't . . . there's nothing else. One, two, and four . . . I would say you don't proceed under one, two, and four, do you, under the Federal Arbitration Act, Section 10? Only three. Is that correct? As the statutes that we named, Your Honor, but also to the . . . I think there's a broader picture here. Let me make sure I understand the question. Section 10 has four grounds. Which of the four grounds are you proceeding under? We invoked Section 3 of those grounds under . . . And the other three you do not invoke? That is correct, Your Honor. And the basis under the third ground is you are saying there's misconduct because the arbitrator didn't consider some evidence, which is the evidence of other institutions having been treated differently. No, Your Honor. I think that's a little bit more . . . a lot more narrow than what we're arguing. Well, then tell me what is the basis of the misconduct that you rely upon to establish a vacature under Section 10 of the Federal Arbitration Act? Yes, Your Honor. The focus of those cases is that . . . No. I want to know what is the basis that you rely upon to say there was misconduct in this case by the arbitrator. The basis is that we were categorically excluded from raising relevant arguments. Isn't that just what I just asked you? Yes. I just asked you, is that the basis of it? That is the basis. I'm not trying to argue with you. I just want to understand your case because I want you to have a fair hearing. If I walk out of here and I'm just not understanding your case, that's not fair to you. I'm asking you to explain it so that we can understand your case. So the refusal to hear this evidence, is that the evidence that . . . well, tell me what is that evidence? Well, I think that's . . . and that's what I'm trying to explain. And, again, I'm not trying to argue with you either. But what is that evidence? The evidence is beyond the record, looking beyond the record. Okay, but can I just ask you a question? How can it be arbitral misconduct not to look beyond the record when the arbitration agreement says you can't look beyond the record? How are we going to say this arbitrator engaged in misconduct by adhering to the terms of the agreement? Well, I agree, and that's why . . . because, again, it's not looking at the intent of the arbitrator. But I do think that the more appropriate grounds to look at this from is from whether those procedures . . . But you answered, Judge Winn, that we're here on the vacatur motion based on arbitral misconduct. And I just want you to explain to me how it's misconduct for an arbitrator to follow the precise terms of the arbitration agreement. Well, I'll just say simply that our position on that is that the fact that the instructions required him to commit misconduct is not an excuse for committing misconduct. Okay. And I think that is . . . Are there any other cases that find arbitral misconduct in this form following the terms of the arbitration agreement? It just seems to me like if you don't like the arbitration agreement, if you think it's unconscionable or one-sided, you challenge it under Section 2. But that's not grounds for vacating. Yes, and I think that's what . . . in the complaint, in the procedural due process challenge that we raised on the professional side, that's what we're trying to do with that. And that's really the argument and the thrust of our argument in that case is that because professional massage requires this level of judicial review, that ACCSC has completely abdicated, insulated itself from, we have been denied due process. And under the Higher Education Act . . . It's just . . . The massage case didn't have an arbitration agreement. And I guess my concern with the kind of thrust of your argument, as I understand it, is that you want us to say that an arbitration violates due process if it doesn't allow for discovery and things like that. Whereas the whole point of arbitration, I thought, was these kind of streamlined proceedings that generally don't allow for discovery. So, what are we getting into here? Well, because the due process requirements of professional massage do not allow an accreditor to say you can only look at this one hyper-narrow issue. He could not decide whether or not ACCSC lawfully withdrew CEH's accreditation. That is what the judicial rule is required for. He could . . . I mean, there's no discovery when you challenge an agency order. Like, you're stuck with the agency record, and that's that. And so far, nobody thinks that violates due process. Well, Your Honor, I would push back on that because many courts have held that effective judicial review . . . You can't have effective judicial review where the agency gets to decide as a matter of course that this is the record and there's no challenge to that. There has to be some opportunity where there is indicia of bad faith and where you make a substantial showing. And that might be difficult . . .  . . . that you have the opportunity . . . What makes this case different, though, is the requirement to arbitrate. And that's what I was asking about earlier, is exactly what does that entail? What's the scope of the arbitration? How binding is it in the context of this statute, which seems to contemplate that a civil action can be brought by someone like your client . . . if they're denied accreditation for some improper reason. But, it says that, but then it also requires arbitration. So, how do those two provisions work? Again, as it said, there has to be this initial arbitration . . . Is that binding? No, I don't think that it is binding, Your Honor, because it has to . . . the judicial review required by professional misogyny has to be afforded to that. And also, as quickly with my last few seconds here before rebuttal, the fact . . . the arbitration award isn't a bar to CEHE's bad faith claims because they did not comprise any part of the arbitration award. And I see my time . . . But, the massage case says that you need like a substantial showing of bad faith . . . before we kind of get into the due process area of things. Where is the substantial showing here? Well, Your Honor, I think that's my point is that we have been trying to make that showing from the beginning. And, I see my time has expired. You have no good answer? Yeah, so . . . You have to have the opportunity to make that showing. And that, again, is going to be a factual matter. We're here today on a 12C motion, which is whether we've stated a plausible claim for belief. So, we certainly understand that the district court could eventually say, no, you haven't met your burden . . . of showing the need to expand the record and get discovery. And, that's going to make this a difficult case. But, due process requires that it would at least have the opportunity to try. That we get the opportunity to make that argument and to make our case. And, the district court may very well say, no, I don't buy it. But then, you know, we don't have any due process. We've had the opportunity to be heard. We've had a hearing on those matters. But, to decide right now that ACC's record is complete, simply because ACC says it's complete . . . That doesn't comport with due process. It doesn't comport with professional misogynist. All right. Thank you, Counsel. Thank you, Your Honor. Mr. Schabelsky. Good morning. If it pleases the Court, my name is Mike Schabelsky, along with Louis Powell. We represent the Accrediting Commission. The Commission withdrew Independent University's accreditation . . . placement metrics required by the Commission standards. You know, trying to understand the posture of the case, it really can get pretty simple about it. There's a motion to vacate 12C, but it relies upon the Federal Arbitration Act, Section 10, for the four grounds of vacate. As I understand it, we're proceeding here on the third ground, the question of whether there's misconduct . . . which boils down to this evidentiary presentation, which then gets very simple to say . . . Are you entitled to come in and show evidence of probation and how you handle other universities? Or, must you just rely on your benchmark, or as Judge Harris say, follow the arbitration award? If it's that simple, that issue is pretty much straightforward. And, the other one on the complaint is really a question of . . . Are we going to say that's a collateral attack, because to give the relief here would be just to vacate the award? Is that a summary of this case? Yes, sir, Your Honor. Absolutely. What? Well, tell me what . . . I'm trying to understand what more is there to say about it. I'm trying to understand this case to make it complicated enough, so that we can spend a lot of time talking about it. But, give me something other than that, at least from my perspective. My colleagues may have something, but I'm trying to understand what this case is about that makes it . . . other than just a very simple case. Well, one complication is, I don't know that I have an answer to this yet, is . . . the statute seems to contemplate arbitration clearly. But, your colleague on the other side says that that arbitration isn't binding. That because of the makeup of the statute that allows for an independent civil action to be brought . . . related to claims of accreditation, that makes this somehow different. Well, two questions. Is the arbitration binding? Yes, sir. It is binding. Okay. So, what's the purpose of this independent provision, Section F of the statute . . . that seems to contemplate a separate civil action? Well, as we understand it, Your Honor, that in the event you have binding arbitration . . . And, not all agency have to make . . . not all accreditation bodies have to make their arbitration binding. That's a choice that the Commission gets to make . . . and the people who elect to use that Commission's accreditation process, consent to. So, in this case, that was the agreed upon regime, that it was going to be binding arbitration. Absolutely. The instructions say the arbitration is exclusive and binding. And, I believe in the complaint, the plaintiff here in as much admits that it is binding arbitration. And, I think that goes to the heart of the matter, Your Honor. The plaintiff here consented to these arbitration rules that they're now objecting to. If they did not want to be bound by the rules that require binding arbitration, they had a remedy. They could go and seek accreditation with another Commission. There are scores of them. They elected to stay with this body and are now bound by its rules. And, I would add, Your Honors, that it is not unlawful for an arbitration agreement to dispense with discovery. This Court recognized that as far back as 1980 in the Burton v. Bush decision, where you affirmed an award that was challenged because someone said, I wasn't allowed discovery. This Court said the rules of civil procedure don't apply to arbitration, and the parties can't agree to forego discovery. So, let me ask you about that. So, the instructions are form instructions. Is there any ability on the part of the institution to negotiate a different kind of arbitration agreement that might allow for discovery? Is it a take-it-or-leave-it proposition? I don't think that there is a process in the bylaws or instructions that allow, I think, what you're referring to as a negotiation. Right. The negotiation comes up front when the school decides, votes with its feet, so to speak, to decide, I want accreditation with this commission as opposed to all the other ones, and so I'm agreeing to be bound by these rules. And these rules have to be applied fairly and consistently to all the applicants, so we can't just make one-off exceptions for someone who decides they have buyer's remorse. And, you know, there is nothing about the Higher Education Act or these claims that should say that they should be carved out from the recognized principle that discovery is not required in arbitration if that's what the instructions provide. The Federal Arbitration Act doesn't carve out anything like that. Rather, Section 2 of the Federal Arbitration Act obligates courts to enforce arbitration agreements as written. What seems to me somewhat odd. Department of Education has the authority here, and then you have this act. And then if you want to have an educational institution, you then go find accrediting agents. Is that right? Yes, sir. They pick it.  And then that's overseen by the Department of Education. So herein is an arbitration agreement, as Judge Diaz has pointed out. Are they bound to go this way? I don't understand how you pick an arbitration. Of course, I don't understand the whole process in terms of this accreditation. How many of these agencies are there out there? And it must have been a reason why they picked this one and stuck with it for a long time. Or maybe you just can't switch back and forth to one. I don't understand that. Well, there are scores of these commissions recognized by the Department of Education. That's just a matter of fact in public domain. The reason why the plaintiff here chose to seek accreditation for Independence University, that's not in the record. And their arguments don't turn on that. And so I think what the court's faced with is this plaintiff elected to seek accreditation with this commission and agreed to be bound by its rules and is now trying to be excused from the consequence of its decision. One of the bases for challenging an arbitration agreement is misconduct by the arbitrator. You agree with that, right? Misconduct by the arbitrator in refusing to hear material evidence. Okay. But not misconduct external to the consideration of material evidence. Is that your position? Not under 10A3. That's correct, Your Honor. So a claim of bad faith related not to the consideration of evidence but something outside of the record is not something that this agreement contemplates. Now, are you asking about bad faith by the arbitrator or bad faith? Yes. There are other grounds for challenging an arbitrator perhaps that touch on those things like bias, things like that by the arbitrator. But that's not the allegation here, Your Honor. There's no allegation in the complaint or the motion to vacate that the arbitrator was personally biased or anything like that. The bad faith argument arises, according to the plaintiffs, they say that the commission acted for protectural reasons, that their decision wasn't based on a good faith assessment of their failure to comply with the standards but were trying to deflect attention or scrutiny from the Department of Education. And I think this then goes to a question, Judge Harris, you raised, and I want to make sure the record's clear on that. The plaintiff did not raise that argument about pretext until the arbitration, and that's important because they didn't argue it before the commission, when the commission was making the decision, and they didn't argue it before the appeals panel. They could have done it at both times because they knew the facts, the facts that they cite and rely on, the letters between the department and the commission about this Colorado decision. What I don't understand is even if they did raise it now, I think I just heard the other side say the only proceeding under Section 3, I mean number 3 under Section 10, Section 2 is where there is evident partiality or corruption in the arbitrators. That's where you would bring that bias type thing. So even if it did, what I've heard here so far today is we are dealing with this misconduct part of Section 10. I agree with you, Your Honor, and I believe Judge Harris, you asked, was there ever any court that found arbitral misconduct under 10A3 where the arbitrator followed the rules and the aggrieved party didn't like the arbitrator doing that? The answer is no. We found none. I assume the plaintiff has found none because they've never cited any. The only case they've ever relied on to try to argue misconduct below, and I think here too, is this Marabone decision that this court issued. In that case, the court did vacate an award where the arbitrator refused to hold a hearing and receive evidence, but significantly unlike this case, the arbitration agreement in Marabone expressly required the arbitrator to hold a hearing and receive evidence, and in holding that that was misconduct, this court emphasized that the arbitrator was required to follow the rules, and when he didn't, his deviation from the rule was something that was the misconduct that deprived the full hearing. So Marabone doesn't stand for the proposition that this court has some sort of roving commission under Section 10A3 to look at the rules, the arbitral rules, and decide whether you think that they're fair or not. Rather, that is a matter for the parties in their agreement, and Section 2 of the FAA obligates this court to enforce the arbitration agreement as the parties have set them. Can I ask you a question about the scope of review in the arbitration agreement? So what happens, and I understand this is purely hypothetical, but what happens if it turns out after a case has been to the appellate panel, then evidence emerges that the commission, say there was a conflict of interest, like a financial conflict of interest, but nobody knew about it until after you have the appellate decision, and as I understand it, the arbitrator's scope of review is limited to what was in front of the appellate panel. So then what? I would say it's the same thing that happens, for example, if in professional massage, after this court's decision, evidence of financial bias emerged then. We do have rules of finality. We have rules of res judicata. But now in this particular context, Your Honor, the grounds for the alleged bad faith . . . No, I'm sorry, I didn't quite understand that. So the answer is the arbitrator can't take account of that? That is right. Okay. But the way these rules are set up . . . And then what happens after that? Does that mean the thing just stands, even though there's an evident conflict of interest because of finality? Yes, ma'am. Okay. And that happens in lawsuits all the time. The way the rules work here, though, for this specific allegation of bad faith, the rules are designed to encourage the school to present its arguments and grounds early in the process when they're dealing with the commission. And this was a two-plus-year process. Any time during that two-plus years, they could have made this argument about pretext. It encourages to say you then have to make that argument before the appeals panel. But they're trying to nip it in the bud. I was asking you about what happens if the evidence doesn't come to light until after the appeal. Recognizing that that wasn't the case here . . . That's why I said it was hypothetical. . . . but in that case, Your Honor, I think it may well be that if it emerged years after the fact, right, it's going to be just too late. It's a little different if it emerges during the course of proceedings . . . No, and I . . . . . . in the course of final judgment. I understand why the court might be thinking about the consequences of that and that could pose tough choices that have to be made there. But I think, Your Honor, if we've gone through the process, you agree to binding arbitration, you have it, and there aren't grounds for vacatur under Section 10. The FAA says that's final. You know, there's nothing . . . Professional massage did not hold that parties could not agree to binding arbitration and to adjudicate their claims in arbitration. Do you know why there wasn't an arbitration agreement in that case? I thought everybody had to arbitrate. It's weird that we have this one big case on this, but it doesn't involve an arbitration agreement. As I understand it, Your Honor, the Commission, which was the party in professional massage, did not have binding arbitration rules at the time that the professional massage dispute arose. And so these arbitration rules were promulgated and became part of the Commission's bylaws and instructions after the relevant time frame in professional massage. And there's nothing in professional massage that says, oh, a school has to be able to raise these claims in federal court, and that would be passing strains for the court to make that holding because in all manner of cases, federal courts recognize that parties can agree to arbitrate all manner of federal claims, including federal statutory claims. And that is what happened here. And really, if you step back and look at it, Your Honor, the school here got all the due process that this court held in professional massage was required. It got ample notice of the Commission's belief that they were in compliance. They were given written grounds as to why they were not in compliance. They had an ample opportunity over two years to demonstrate compliance or make improvements to meet our standards. In fact, they were given more time than the Commission's standards require because the Commission agreed to an extension. They were allowed to respond in writing to all the cited shortcomings, submit whatever documents and information they had to state their case. As the arbitrator noted, 32,000 pages of documents they submitted. And then they had an appeal before an independent panel in which they could raise any grounds they wanted, and they had the assistance of counsel. That is the exact process that this court held in professional massage satisfied due process. In fact, you wrote on page 174, quote, we do not think due process required more than that. So they got all the plaintiffs here got all the process that this court blessed in professional massage. And, of course, there was the findings that the withdrawal decision was based on substantial evidence. Can I ask a question about one of the claims that your colleague on the other side raises on behalf of the institution, and that is that they were treated differently than other similarly situated institutions, and they weren't allowed to present that argument or weren't allowed to procure discovery to support that argument. So I guess the first half of that is the agreement says what it says. You're not entitled to discovery. But if they had independent evidence outside of discovery that they could present to the arbitrator, would it have been error for the arbitrator not to consider that argument? If they had submitted evidence, yes, it would have been error for him not to consider it. I don't know if it would have necessarily been misconduct. But I thought your client's position was that each institution is evaluated independently. The file is the file, and you don't consider evidence of other institutions. That is our position. But also that's the holdings of several federal courts, including courts in this circuit, that evidence about the rulings in other schools don't bear on whether or not there was substantial evidence for the immediate revocation decision. But, Your Honor, I want to make sure you're clear on something here. This plaintiff here was allowed to raise that argument and did, in fact, raise it and present evidence on that point, both before the commission during this two-year process where the parties were engaged in the dialogue before the withdrawal decision was made, as well as before the appeals panel. And they submitted, the plaintiff, that is, submitted evidence regarding, I think it was three other schools, maybe four, because that information's out there in the public domain. So the rules didn't prohibit them from making that argument. They did submit the evidence that they had, and that evidence was considered by both the appeals panel, which considered it and gave its reasons why it didn't think it mattered, and then it was raised again before the arbitrator, and the arbitrator considered that evidence and addressed it in his award and went through the analysis as to why he didn't think it changed the ultimate conclusion that the commission here had provided due process. So it was submitted and considered and rejected, and that finding, whether you think it's right, wrong, or somewhere in between, we think it's right, but under the Arbitration Act, that was a decision for the arbitrator. And under the Federal Arbitration Act, a federal court can't now come in and say, well, we want to look at the merits of that and see if the arbitrator got it right. That was a question consigned to the arbitrator by the agreement. And at the end of the day, we haven't talked about the collateral estoppel. I did want to make one point on that, Your Honors. Counsel argued here, he said, he did view those claims as one challenge to the withdrawal decision. I think that tells you everything you need to know about the collateral attack. Those damages claims seek to relitigate whether or not the commission afforded the plaintiff due process. And that was a finding that the arbitrator made in his ruling on page 35. He wrote, the tribunal must decline to reverse the appeals panel decision on the ground that it deprived independence of due process. That is a finding in the arbitration. Their damages or claims that they've asserted in the complaint seek to relitigate that decision and nullify its effect. And that is a classic collateral attack. Thank you, Your Honor. Thank you, Counsel. Thank you. First, I want to quickly address that there was no collateral attack here. The claims and the harm that CHE brings existed long before and separate from the arbitration. We're challenging the unlawful withdrawal decision and the resulting closure and loss of contracts. That happened well before and independent of the arbitration, which the district court agreed to when it said that if that initial arbitration decision was unlawful, then it was the proximate cause of those harms. Also, the arbitration work cannot, or the bad faith claims cannot comprise the arbitration work because, again, they were excluded from consideration entirely. And I think that's important in this arbitration that we were categorically barred from the arguments that we could raise. We could not challenge bad faith. And they harp on and talk about discovery, but we were only asking for the opportunity to expand the record. And the evidence that we provided was to make that show that the arbitrator, it's important, did not consider the merits of whether we showed the entitlement to discovery, and nobody has. This idea that this isn't a collateral attack because your bad faith argument wasn't heard, so how can it be a collateral attack? It just seems like where you're headed with that. The arbitrator didn't hear your bad faith attack because you hadn't raised it before the commission or the appellate panel, and the scope of review was limited to the record before those two bodies. It can't be the case that by forfeiting an argument before the commission and the appellate panel, then you go to arbitration, the arbitrator doesn't reach the forfeited argument, but now you're allowed to bring what would otherwise be a collateral attack because you forfeited this, and therefore the arbitrator didn't consider it. Do you see what I'm saying? That seems like an absurd result. Well, I would like to push back a little bit. In the context of the initial withdrawal decision, I can't overestimate enough that for the probation period prior to that, ACCSC had commended the efforts and recognized knowing that it would be years and how much time it was going to take that good cause existed to continue to extend the efforts. When the withdrawal decision came, there was no reason before then that we would ever challenge them. This was a good working relationship. They were accepting of what we did and said that you have warranted good time to see these efforts through, subject to our close monitoring. I'm not trying to make a normative point about why you didn't raise it. I'm just saying, do you see the kind of weird result that we would end up with if we tracked your reasoning on this? That because an issue was not raised before the accrediting body or the appellate panel, the arbitrator didn't reach it, and therefore you can now bring an attack on the arbitral award that would have been foreclosed had this issue been properly raised. But it couldn't be properly raised. That's the point. The arbitrator could only consider the one narrow issue. And to take their interpretation of what this was would be you could only challenge bad faith if the accreditor voluntarily offers evidence of its bad faith in the record, which is never going to happen. And on the substantial evidence review, as this court noted in Professional Massage, there's dozens of accreditation standards that involve highly subjective matters of broad discretion. Any accreditor with an axe to grind is always going to be able to go to a school and manufacture some compliance issue that has more than a mere scintilla evidence to support it or some matter of discretion. So what you're doing is you're effectively making their decisions unreviewable. You can't challenge the fairness of the procedures that we're afforded. We've been trying throughout this process to say, no, we are obligated to raise these issues of bad faith and we've not been able to do it at any stage, even in the initial appeal. You're limited to only the evidence that's in the record. That's unalterably closed. We tried. We were flatly denied. And we have to argue the grounds based on what the initial decision said. We can't go beyond that record. An effective judicial review requires looking beyond the record where there's a significant showing that we've never been able to make. Also, just quickly, I want to point out that in professional massage, this court recognized that the accreditation standards and the processes that they employ are not matters of contract. They can be changed unilaterally. And they don't get to just decide what level of judicial review they want to submit to and whether they want to comport with the due process requirements. And I think that accreditors or that this member school should be able to rely on the fact that they will afford due process. So the fact that they adopted this rule nearly a decade ago shouldn't bar the ability of the school to challenge the fairness of those procedures as they're being applied in an enforcement proceeding, which is exactly what we're trying to do here. As this was applied to us, we've been fundamentally denied any aspect of due process, and all we're seeking is our day in court. On 12C, we've stated a plausible claim to relief, and if the court decides that the procedures that we had were fair, then that will be the end of the case. But I think there's substantial reason and factual issues of why that's not the case. All right. Thank you, counsel. Thank you. I want to thank both counsel for their excellent arguments this morning. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, James Andrew Wynn, Pamela A. Harris